IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KISHA GORHAM, et al.,          )
                               )
          Plaintiffs,          )
                               )
     v.                        )          1:14-CV-386
                               )
AMUSEMENTS OF ROCHESTER,       )
INC., et al.,                  )
                               )
          Defendants.          )

### REDACTED PUBLIC
### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In the fall of 2013, the plaintiffs were exiting a ride at the North Carolina State

Fair when the ride began moving again. All four plaintiffs were injured, and they soon

brought suit against the parties they claimed negligently owned, repaired, or operated the

ride. The plaintiffs have settled their claims against three of these defendants, and the

parties seek court approval of those settlements as to the minor and the incompetent

plaintiffs. The Court will approve the settlements and direct disposition of the settlement

funds as set forth herein.

### PROCEDURAL BACKGROUND

The parties have filed joint motions seeking approval of the settlements between

the settling defendants, Family Attractions Amusement, L.L.C., Joshua Macaroni, and

Timothy Tutterrow, and the guardian ad litem, Kisha Gorham, on behalf of her son,

minor-plaintiff J.H., and between the same defendants and the general guardian, also Ms.

Gorham, on behalf of her husband, incompetent-plaintiff Anthony Gorham, Jr. (*See* Docs. 46, 47.)[1] In both motions, the parties stated that they would provide the Court with a "Closing Statement" in support of each settlement at the January 21, 2015, hearing on the motions. (*See* Doc. 46 at 2; Doc. 47 at 2; *see also* Text Order Dec. 15, 2014.) Attached to the motions were copies of the state-court guardianship orders and proposed orders for this Court to approve the settlements.[2] (*See* Docs. 46-1, 47-1.)

The day before the January 21 hearing, the parties submitted by e-mail a copy of a "Confidential Mediated Settlement Agreement," since filed under seal. (Doc. 76.) At the hearing, the Court approved the total settlement amounts based on the parties' representations, but neither party presented the Court with the promised Closing Statements. (*See* Minute Entry Jan. 21, 2015; Doc. 46 at 2; Doc. 47 at 2; *see also* Doc. 52 at 1.) After inquiry by the Court, defense counsel handed up a summary of the plaintiffs' medical bills. Plaintiffs' counsel was unprepared to discuss the requested attorneys' fees, the amount of liens or expenses, or what would happen to the balance of the settlement proceeds. The Court specifically identified these deficiencies in open

---

[1] The remaining plaintiffs, Kisha Gorham, individually, and Shykema Dempsey, have also settled their claims against these defendants, as has another injured claimant who had not brought suit at the time of the settlement. (*See* Doc. 44 at ¶ 4; *see also* Minute Entry May 5, 2015.) In addition, the fourth defendant, Amusements of Rochester, Inc., agreed to dismiss with prejudice all of its cross-claims against the settling defendants. (*See* Doc. 44 at ¶ 5; *see also* Minute Entry May 5, 2015.) These settlements do not require court approval because the parties are all competent adults. After this Order was nearly finalized, the parties informed the Court that the remaining claims against Rochester were also settled. This Order does not deal with any aspect of the recent settlements with Rochester.

[2] The proposed orders submitted by the parties incorrectly included J.H.'s father as a plaintiff, (*see* Doc. 46-1 at 2; Doc. 47-1 at 2), despite the fact that he is not a party to this lawsuit.

2

court and, being unable to approve the settlements, held the matter open to give the parties a chance to supplement the record. (*See* Minute Entry Jan. 21, 2015.)

In their second-chance submissions, plaintiffs' counsel filed proposed Closing Statements for each plaintiff. (*See* Docs. 50, 50-1; *see also* Doc. 49 at ¶ 5.) Each Closing Statement listed the total settlement amount, the amounts due various medical providers and other vendors to be paid from the settlement proceeds, the amount of the requested attorneys' fee, and the "balance" after paying attorneys' fees, costs, and expenses. (*See* Doc. 50 at 1-3; Doc. 50-1 at 1-4.) Attached to each Closing Statement were copies of an addendum to each plaintiff's settlement agreement that listed the amounts of "Up Front Monies" and the amounts and details of the structured settlements. (*See* Doc. 50 at 4-6; Doc. 50-1 at 5-7.)

Plaintiffs' counsel submitted no affidavits or other information in support of the requested attorneys' fees and no copies of the bills the plaintiffs sought to have paid out of the settlement proceeds. The materials before the Court—the Closing Statements, the settlement agreement, and the addenda—contained no plan or proposal for what would happen to the settlement balances after payment of any court-approved expenses and fees. In a related motion to seal, the plaintiffs appeared to propose that all the remaining money should be paid to Ms. Gorham. (*See* Doc. 49 at ¶ 6.) Even though the Court explicitly invited further information during the January 21 hearing, (*see* Minute Entry Jan. 21, 2015), no party submitted any authority on the standard to apply in evaluating a settlement and approving disbursements of the proceeds beyond a citation to Local Rule 17.1(f). (*See* Doc. 49 at ¶ 6; Docs. 50, 50-1.) The Closing Statements also reflected that

3

plaintiffs' counsel had already removed the amounts of the requested attorneys' fees from their trust account. (*See* Doc. 50 at 1; Doc. 50-1 at 1.)

On February 10, the Court entered an order ruling on certain aspects of the motions, offering the parties a third chance to supplement the record as to other aspects of the motions, and requiring counsel to return the amounts taken as attorneys' fees to their trust account. (*See* Doc. 52.) Specifically, the Court again found the total settlement amounts to be fair and reasonable and approved some of the proposed expenditures from settlement funds to pay various personal and litigation-related expenses. (*See* Doc. 52 at 1, 3, 5, 7-8.) The Court found that the Closing Statements did not adequately explain or justify some of the expenses, nor did they propose an appropriate plan for disposition of the settlement proceeds after approval. (*See* Doc. 52 at 3-8.) The Court approved an attorneys' fee of 10% for counsel's representation of J.H. and held open the amount of the attorneys' fee for Mr. Gorham's case pending submission of additional information and briefing. (*See* Doc. 52 at 4-5, 7-10.)

In their third-chance supplementary submissions, the plaintiffs and their attorneys filed the requested additional information and briefing in support of the settlements, explained their views on what should be done with the settlement proceeds, and asked the Court to revisit its decision as to the amount of the attorneys' fee for J.H.'s claims. (*See* Docs. 57, 58, 67, 67-1 to 67-15, 69, 69-2 to 69-15); *see also* discussion *infra*. The Court has entered various orders concerning the parties' requests to seal the settlement amounts and supporting documents. (*See* Docs. 66, 71, 74, 75; *see also* Docs. 49, 72.) The Court held a brief telephone conference with counsel on May 5 to clarify a few factual matters

4

related to the motions to approve the settlements and the related motions to seal. (*See* Minute Entry May 5, 2015.)

## ANALYSIS

### 1. The Minor Child's Settlement

The parties seek court approval of the settlement of J.H.'s claims pursuant to Local Rule 17.1 and well-established federal and North Carolina practice. (*See* Doc. 52 at 2 (collecting cases)); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243-44 (4th Cir. 2010). Courts have "inherent authority over the property of infants and will exercise this jurisdiction whenever necessary to preserve and protect children's estates and interests. The court looks closely into contracts or settlements materially affecting the rights of infants." *Sigmund Sternberger Found., Inc. v. Tannenbaum*, 273 N.C. 658, 674, 161 S.E.2d 116, 128 (1968). The investigation and examination of a proposed minor settlement includes a review not only of the total settlement amount, but also of the disposition of the settlement proceeds, including requested payments to others, such as attorneys or medical providers. *E.g.*, *Pryor v. Merten*, 127 N.C. App. 483, 484-86, 490 S.E.2d 590, 591-92 (1997) (reviewing an attorney's claim to be paid out of a minor's settlement proceeds); *see also Abrams*, 605 F.3d at 243 (noting that the district court's supervisory jurisdiction over contingent fee agreements is well-established). Just as a minor is not competent to enter into a binding contract to settle a case, a minor also cannot enter into a binding contract with attorneys, court reporters, medical care providers, and the like. *See Creech ex rel. Creech v. Melnik*, 147 N.C. App. 471, 476-78, 556 S.E.2d 587, 590-92 (2001).

5

As noted in open court at the January 21 hearing and in the Court's February 10 Order, the total settlement amount of J.H.'s claims appears to be fair and reasonable.[3] (*See* Minute Entry Jan. 21, 2015; Doc. 52 at 1, 3.) The specific structured settlement presented is, as previously noted, appropriate. (*See* Doc. 52 at 6; *see also* Doc. 50 at 4-6.) The Court has already approved payment of certain expenses and costs from settlement proceeds. (*See* Doc. 52 at 5.) The only issues remaining are whether and in what amount the Court should grant plaintiffs' counsel's requests to pay certain other items from the settlement proceeds and what should be done with the remaining settlement proceeds.

**Attorneys' Fee:** At the January 21 hearing, the guardian ad litem and plaintiffs' counsel made no fee request and submitted no information in support of a fee request. (*See* Minute Entry Jan. 21, 2015; *see also* Doc. 47; Doc. 52 at 4-5.) Despite the Court's request during that hearing for additional information about the attorneys' fee, counsel's second-chance submission set forth only the amount of the attorneys' fee, determined as a contingent percentage of the settlement. (*See* Minute Entry Jan. 21, 2015; Doc. 50 at 1; *see also* Doc. 49.) On February 10, the Court entered an order approving a 10% fee rather than the 33% that plaintiffs' counsel sought. (*See* Doc. 52 at 5; Doc. 50 at 1.)

The Court's February 10 Order did not authorize plaintiffs' counsel to submit new evidence in support of the attorneys' fee for J.H.'s claims. (*See* Doc. 52 at 4-5.) Indeed,

---

[3] From counsel's statements at the January 21 hearing, the fact that Family Attractions is an LLC, and the nature of the individual defendants' employment, the Court assumed that the settling defendants were judgment-proof if there was no insurance. The Court since confirmed with counsel during the May 5 telephone conference that the individual defendants are likely judgment-proof and that any efforts to collect from the LLC's assets would be very challenging. (*See* Minute Entry May 5, 2015.)

6

the Court explicitly said it "w[ould] not allow a third round of submissions on this issue." (Doc. 52 at 5.) The Court did allow any party to file a short brief if the party believed that the Court misapprehended the applicable law or wished to provide additional legal authority for the Court's consideration. (*See* Doc. 52 at 10.)

Thereafter, plaintiffs' counsel filed two briefs, (Docs. 56, 57), and a motion for *in camera* review of some fifteen exhibits, including seven new affidavits and numerous additional documents. (*See* Docs. 58, 59, 67-1 to 67-15 (sealed exhibits), 69-2 to 69-15 (redacted copies of certain sealed exhibits filed at Doc. 67-1 to 67-15).) In their briefs, plaintiffs' counsel relied upon *Abrams*, cited a few other cases, and asked the Court to increase the approved fee; they contended that the Court "misapprehend[ed] the applicable law" and that it would be an abuse of discretion to limit the fee to 10% in light of newly submitted evidence. (*See* Doc. 56 at 2-5; Doc. 57 at 2-6.)

Plaintiffs' counsel has not shown that the Court misapprehended the law when it set the attorneys' fee at 10%. They have identified no evidence before the Court at the time it set the 10% fee that the Court did not consider. Nor has plaintiffs' counsel satisfied the Court that it should reconsider its decision.

Counsel's first argument, that the settlement is fair and reasonable, does not even purport to show an error of law. (*See* Doc. 57 at 2.) Indeed, it merely begs the question, as the Court would not approve the settlement at all if it was not fair and reasonable. The Fourth Circuit in *Abrams* rejected the argument that plaintiffs' counsel are entitled to have their contingent fee agreement approved in a case involving a minor unless the resulting fees are "clearly excessive." *See Abrams*, 605 F.3d at 243-44. Instead, the fee

7

will be approved, as the *Abrams* court held, only to the extent it is reasonable. *See id.* (holding that "the review of fee arrangements is for reasonableness").

In their remaining arguments, plaintiffs' counsel concede that they provided inadequate information to the Court and then blame the Court for their own failures. (*See* Doc. 57 at 3-6.) They take the contradictory positions that the Court should not have relied upon its own experience on the one hand and that it should have known more about contingent fees as a result of its experience on the other. (*See* Doc. 57 at 3-6.)

For example, plaintiffs' counsel contend that the Court should not have relied upon its experience in evaluating the reasonableness of the fee request because "[t]he Court's experience with this case was limited." (*See* Doc. 57 at 5-6.) That argument implicitly concedes that plaintiffs' counsel failed to provide enough information to the Court, despite two opportunities to do so.[4] To the extent the information provided by the litigants at the January 21 hearing was inadequate to support the request for a 33% fee, that is the fault of plaintiffs' counsel, not of the Court. (*See* Minute Entry Jan. 21, 2015.)

Similarly, plaintiffs' counsel contends that the Court "fail[ed] to recognize" that the 33% contingent fee as to J.H. is the customary fee for such work. (*See* Doc. 57 at 3-

---

[4] Plaintiffs' counsel has not expressed any dissatisfaction with the Court's reliance upon its own experience in approving the expenses in this case, none of which were supported by any documentation at the initial hearing or in the second-chance submissions. *See* discussion *infra*. Moreover, if the Court had not relied upon its own experience at the January 21 settlement hearing, it is doubtful that the Court could have approved the total settlement amount; there was only a brief oral summary of the injuries and an incomplete list of the medical bills provided by defense counsel, there were no copies of any medical records reflecting the degree of permanent injury, and, continuing to this day, there is no information about the amounts paid to the other injured persons so that the Court can evaluate whether J.H.'s proportionate share is fair.

8

4.) Because the Court, according to plaintiffs' counsel, is not supposed to consider its own experience, it is difficult to understand how the Court should have known this in the face of a silent record. (*See* Minute Entry Jan. 21, 2015; Doc. 52 at 4-5; Doc. 57 at 5-6.) In any event, the obvious fact that such fee agreements are common does not mean such agreements are always enforced where the plaintiff is a minor, nor does it mean that it is an error of law to set a lower fee. Implicit in the Court's carefully limited statement that it did not recall ever approving a 33% contingent fee "when the case settled early for policy limits and with little dispute over liability" is the recognition that such approval might well be appropriate in other circumstances. (*See* Doc. 52 at 4.) Plaintiffs' counsel has the burden to show that the requested fee was reasonable and failed to do so. *See Abrams*, 605 F.3d at 243-44.

Plaintiffs' counsel also contends that the Court inadequately considered the nature of the contingent fee and the risk assumed by counsel. (*See* Doc. 57 at 2-5.) That contention is belied by the Court's February 10 Order, which explicitly acknowledged the need to take risk into account. (*See* Doc. 52 at 4 (noting that "the Court appreciates the need to compensate counsel for risk").) Nothing in *Abrams* requires a court to approve a requested fee merely because it is contingent, and nothing in *Abrams* dictates that plaintiffs' counsel are entitled to a 33% fee without any showing that such a fee is reasonable. *See generally Abrams*, 605 F.3d at 243-49.

Finally, the cases cited by plaintiffs' counsel do not establish any misapprehension of the law. (*See* Doc. 57 at 3-4.) *King v. Fox*, No. 97 Civ.4134 RWS, 2004 WL 68397 (S.D.N.Y. Jan. 14, 2004), involved an adult plaintiff with a claim for royalties against a

9

record company, not a minor plaintiff, and concerned a dispute over whether an attorney had breached his fiduciary duty to the client. *See King*, 2004 WL 68397, at *1-2. While the court did note that one-third contingency fees are "commonly used across the country," it did not hold that such a fee was enforceable and mandatory in all circumstances without a showing of reasonableness. *See id.* at *4-5.

*In re Smart World Techs., LLC*, 552 F.3d 228 (2d Cir. 2009), (*see* Doc. 57 at 5), involved a situation where a bankruptcy court pre-approved a contingency fee for the debtor's counsel. *See Smart World Techs.*, 552 F.3d at 229-32. Needless to say, no court pre-approved the fee arrangement in this case.

This case is substantially different from *Abrams*, which lasted several years and had a number of obvious "sticky problems" requiring two different lawsuits and a trial. *See Abrams*, 605 F.3d at 240-48; (*see also* Doc. 57 at 2-4.) Moreover, in *Abrams*, unlike here, plaintiffs' counsel submitted numerous affidavits in support of their fee application. *See Abrams*, 605 F.3d at 248. The same is true of *Williams v. Old HB, Inc.*, No. 7:13-cv-00464, 2015 WL 127862 (W.D. Va. Jan. 8, 2015), (*see* Doc. 57 at 3), an even more complicated case with an extensive proffer of evidence in support of the attorneys' fee request.[5] *See Williams*, 2015 WL 127862.

---

[5] *Williams* involved a German plaintiff who was injured on a bicycle tour in Virginia and became incompetent as a result. *See Williams*, 2015 WL 127862, at *2. Among other things, the incompetent-plaintiff's counsel obtained translations of documents, facilitated communications between medical care providers in Virginia and the plaintiff's family in Germany, arranged medical transportation for the plaintiff back to Germany, obtained records and bills for the resulting care in Germany, dealt with a bankrupt defendant and numerous complications in an eighteen-month effort to lift the bankruptcy stay, and filed suit and participated in full discovery. *See id.* at *2-4, 7-8. Settlement occurred almost three years after the accident and just two

The presiding judge in *Williams* did not approve the contingency fee merely because the settlement was favorable and counsel requested the fee. *See Williams*, 2015 WL 127862, at *4-11. Rather, the court reviewed every aspect of the requested fee and only approved it because of the abundant evidence that supported it, a situation not present here. *See id.* at 11 (noting that the court reviewed "hundreds of documents submitted in support of [the fee] request"). Indeed, the comparison between the information counsel submitted in *Abrams* and *Williams* in support of their fee requests and the lack of information submitted in this case is quite striking. *See Abrams*, 605 F.3d at 248; *Williams*, 2015 WL 127862, at *4-11; (*see also* Doc. 52 at 4-5.) It was and remains hard to understand how plaintiffs' counsel here thought a combined attorneys' fee of ███████████████[6] would be approved based on the record before the Court at the time of the February 10 Order. (*See* Doc. 52 at 4-5.)

As reflected in the February 10 Order, the Court evaluated the information it had before it as to the time and labor required in the case, the novelty and difficulty of the questions presented, the contingent nature of the fee, the award involved and the results obtained, the customary fee for similar work, and the fee awards made in similar cases.

---

months short of trial. *See id.* at *7-8. The *Williams* court noted that the incompetent-plaintiff's two attorneys filed "numerous affidavits of attorneys supporting th[e] fee request" and provided detailed explanations of the work they had undertaken, including estimates that they had "each spent around 1,900 hours on th[e] case." *See id.* at *6-7. The incompetent-plaintiff's sister, who had overseen the case for her brother, testified that the fee was reasonable. *See id.* at *2, 5.

[6] Consistent with the Court's Order on the motions to seal, the total amount of the attorneys' fees and characterizations of those amounts are redacted. (*See* Doc. 74 at 8-10; Doc. 75 at 8-10.)

11

(*See* Doc. 52 at 4-5); *see also Abrams*, 605 F.3d at 244. The Court knew and referenced the amounts of the settlements and the amounts of the requested attorneys' fees for both J.H. and Mr. Gorham.[7] (*See* Doc. 52 at 1, 4-5, 7-8; *see also* Docs. 50, 50-1.) As to the other *Abrams* factors, the Court had no specific evidence or information before it about the skill required, the preclusion of other employment, the time pressures imposed in the case, counsel's experience, reputation, and ability, the undesirability of the case, or the nature and length of the professional relationship between counsel and J.H. *See Abrams*, 605 F.3d at 244. Had the Court mentioned these factors, there would have been nothing to say beyond the fact that there was no specific evidence. As the Court stated, there was a "lack of evidence to support a larger fee." (Doc. 52 at 5.) The Court does not "misapprehend[] the applicable law" when it makes a decision based on the information and evidence the parties submitted. (*See* Doc. 52 at 4-5; *see also* Doc. 57 at 1-2.)

To the extent plaintiffs' counsel contends that the Court "abuse[d] its discretion," (Doc. 57 at 1-2), and attempts to submit additional evidence, (*see* Docs. 58, 59, 67-1 to 67-15; *see also* Docs. 69-2 to 69-15), that effort is outside the scope of the Court's permission to submit a short brief on the question of whether the Court misapprehended the applicable law. (*See* Doc. 52 at 10.) Plaintiffs' counsel did not file a motion for reconsideration and makes no attempt to inform the Court what legal standards would apply to revisiting this issue, identifies no specific Federal Rule of Civil Procedure or

---

[7] The Court did not mention the specific amounts of the attorneys' fees, (*see* Doc. 52 at 1, 4-5, 7-8), because of the pending motions to seal those amounts and the settlement amounts. (*See* Docs. 49, 72, 74, 75.)

other rule that authorizes reconsideration, and cites no case discussing when a court should reconsider a decision. This violates the Local Rules in multiple ways, including the requirement that counsel "state with particularity the grounds" for a request and "cite any statute or rule of procedure relied upon." L.R. 7.3(b). It is not the Court's job to do counsel's legal research for them, *see Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) ("[I]t is not this court's responsibility to research and construct the parties' arguments." (internal quotation marks omitted)); *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."), and to the extent plaintiffs' counsel asks the Court to reach a different result based on new evidence, that request is denied on this basis alone.

In the alternative, to the extent this backhanded effort to seek reconsideration is considered a motion, the Court will deny it on its merits. However low the standard for reconsideration is or might be, plaintiffs' counsel has not met it. The Court will not exercise its discretion to reconsider its decision under the circumstances of this case.

The mere fact that plaintiffs' counsel disagrees with the Court's decision is not a basis for reconsideration. Nor is it ordinarily a reason to reconsider a decision just because a litigant wants to submit evidence and legal argument it could have submitted before the decision was made, even if the new evidence might support a different decision. *See, e.g., Jones v. Dimensions Health Corp.*, No. PWG-13-2250, 2014 WL 1339635, at *3 (D. Md. Apr. 2, 2014) ("Hindsight being perfect, it requires no great skill

13

for a lawyer to construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order.").

As discussed *supra*, plaintiffs' counsel has not identified any misapprehension of the law. The Court considered the evidence and lack of evidence before it, including the need to compensate counsel for risk. (*See generally* Doc. 52.) The Court explicitly set a fee it found to be reasonable in light of the record, which is the appropriate standard. *See Abrams*, 605 F.3d at 243-44.

Nor has counsel demonstrated that the Court's prior decision was clearly erroneous or would work manifest injustice. Plaintiffs' counsel has not identified any information in the record before the Court on February 10 that the Court did not consider or that significantly undermines the Court's findings and conclusions. The record as of February 10 supported the Court's finding that there was "little dispute over liability" and that "the risk of no recovery against the settling defendants was relatively small." (*See* Doc. 52 at 4.) The case was filed on April 10, 2014, in state court, less than six months after the accident. (*See* Doc. 1 at ¶ 1; Doc. 1-1 at ¶ 10; Doc. 5 at ¶ 10.) It was promptly removed to this Court. (*See* Doc. 1.) After dispositive motions were filed as to some of the litigants, (*see* Docs. 22, 24, 29), and before discovery began, the parties sought a stay in order to mediate. (*See* Docs. 38, 39; *see also* Text Order Dec. 4, 2014.) It settled in large part soon thereafter. (*See* Text Order Dec. 4, 2014; Docs. 46, 47.) At the January 21 hearing, plaintiffs' local counsel conceded that the case settled fairly quickly. While there was a coverage issue identified, neither party described it as complicated or likely to succeed, and it did not inhibit a quick settlement for policy limits. The criminal

14

charges were mentioned, but no one said this had affected the settlement. The mediation took only one day, during which J.H.'s claims were resolved as were the claims of other injured persons and one defendant's cross-claims against several other defendants. (*See* Doc. 44; *see also* Minute Entry May 5, 2015.) Neither party provided the Court with any information that suggested the liability and coverage issues were serious, and these issues obviously did not deter an early settlement with the settling defendants paying all available funds.

To the extent plaintiffs' counsel contends that the Court did not consider that the pleadings and briefing connected to the motions to dismiss show that the defendants contested liability, that contention is incorrect. (*See* Doc. 57 at 4-6 & n.3.) A review of the pleadings is a necessary part of approving a minor's settlement, as a court cannot find that a settlement is fair and reasonable if it has not reviewed the pleadings. The fact that a defendant files an answer denying liability or a motion to dismiss is virtually no information, by itself, as to the strength of that denial. The Court routinely reviews dispositive motions when they are filed, and in this case the Court reviewed the briefing again in some detail as part of its preparation for the January 21 hearing on the motions to approve the settlements. Nothing in the pleadings or briefs indicated that the case would be any more hotly contested than usual. (*See generally* Docs. 5, 22-25, 29, 30, 34, 35; *see also* Doc. 57 at 4-6 & n.3.) The mere fact that a litigant characterizes arguments as "vigorous" or "fervent," (*see* Doc. 23 at 2, 6), does not speak to the strength of those arguments, and it was obvious from even a cursory review that the defendant's motions to dismiss would not succeed *in toto*.

15

Nor does the tardily submitted evidence support reconsideration. (*See* Docs. 57-59, 67, 67-1 to 67-15; *see also* Docs. 69, 69-2 to 69-15.) The new evidence includes no explanation for the failure of plaintiffs' counsel to support their fee request at the January 21 hearing or with their second-chance submissions. The recently submitted affidavits of three experienced and respected North Carolina lawyers are also silent on these failures. (*See* Docs. 67-5 to 67-7, 69-5 to 69-7.)

In any event, the fact that such fee agreements are common and occasionally approved does not mean that courts always or even routinely approve such fees when the plaintiff is a minor, and none of the three lawyers so testified.[8] None of the lawyers disagreed with the Court's observation in the February 10 Order that it would be unusual to approve a 33% fee in a minor-plaintiff's case that "settled early for policy limits . . . with little dispute over liability." (*See* Doc. 52 at 4.)

This is not a situation where counsel's failure to provide adequate support for its request prejudices the minor such that the Court should allow additional evidence. If the

---

[8] *See* Doc. 67-5 at ¶ 9; Doc. 69-5 at ¶ 9 (affidavit of W.T. Comerford, Jr.) ("It is my opinion that the 33-1/3% contingency fee contract is fair and reasonable for a case of the complexity and difficulty of the present case. The vast majority of even routine personal injury cases in North Carolina are handled by counsel pursuant to a one-third contingency fee after suit is filed."); Doc. 67-6 at ¶ 9; Doc. 69-6 at ¶ 9 (affidavit of D. Pishko) ("[T]he contingent fee of 33% . . . is a reasonable and customary fee for this type of case."); Doc. 67-7 at ¶ 22; Doc. 69-7 at ¶ 22 (affidavit of C. Mahoney) ("A 33% contingency fee and a 33 1/3 contingency fee are common and customary fee arrangements in North Carolina for representing a plaintiff, including a minor or an incompetent adult, in a personal injury case under the facts and circumstances of this matter."). Mr. Mahoney states, "I have requested and had North Carolina superior court judges approve contingent attorney's fees of 29%-33 1/3% from the settlement of a minor plaintiff's personal injury case. I am also aware that in July 2010, the U.S. District Court for the Eastern District of North Carolina approved a 33% contingency fee from an $18,000,000 settlement of an incompetent's plaintiff's case . . . ." (Doc. 67-7 at ¶ 34; Doc. 69-7 at ¶ 34.)

16

lack of information about the attorneys' fee harmed the minor-plaintiff J.H., the Court might well give counsel another chance to supplement the record, as it has concerning other aspects of the settlement-approval process. *See* discussion *supra*; (Minute Entry Jan. 21, 2015; Doc. 52 at 5-10; Doc. 66 at 2-4.) Here, however, J.H.'s interests are not prejudiced by the Court's decision on the amount of the attorneys' fee. Plaintiffs' counsel does not contend otherwise, and J.H.'s mother and guardian ad litem endorses the 10% fee previously approved by the Court. (*See* Doc. 67-4 at ¶ 3; Doc. 69-4 at ¶ 3.)

Finally, plaintiffs' counsel's conduct and quality of work in the settlement-approval process weighs against allowing counsel a third chance to obtain a larger fee. When plaintiffs' local counsel appeared at the January 21 hearing, he was uninformed about the case and could not answer even the most basic of questions about J.H.'s injuries, medical bills, or settlement. (*See* Minute Entry Jan. 21, 2015; *see also* Doc. 52 at 4-5.) Most of the information came from J.H.'s mother and defense counsel. (*See* Minute Entry Jan. 21, 2015.) Thereafter, plaintiffs' counsel submitted a cursory Closing Statement that provided only summary information about expenses and liens and that was so inadequate in several respects that the Court had to ask, again, for more information. (*See* Doc. 50; Doc. 52 at 5, 9-10.) Counsel did not comply with the provisions of the Local Rules requiring a motion to seal for the materials they submitted when the Court gave them a third chance to fill in some gaps. (*See* Docs. 58, 59; Doc. 66 at 3); *see also* L.R. 5.4. Last but not least, plaintiffs' counsel inappropriately transferred the full amount of the requested fee out of their trust account and into their control without court approval or oversight. (*See* Doc. 50 at 1, 3; Doc. 52 at 3 n.2, 9; Doc. 56-1 at ¶ 3.)

There have been negative consequences for J.H. as a result. Had counsel been prepared at the January 21 hearing, the matter could have been handled *in toto* in open court. (*See* Minute Entry Jan. 21, 2015.) Minor settlements are ordinarily simple proceedings when counsel is prepared. Instead, resolution of this settlement has been delayed for several months. Several court orders have been required to correct counsel's mistakes, to ensure that the Court had adequate information on which to base its decisions, and to deal with various aspects of counsel's tardy effort to support its pursuit of a larger fee. (*See* Docs. 52, 54, 66, 71, 74, 75.)

The Court has no doubt that there are some cases where a 33% fee – or even more – in a minor's personal injury case would be appropriate. There may even be the occasional case where that fee would be appropriate when the settlement occurred early and for policy limits. Plaintiffs' counsel failed to show in a timely manner that this case was one of them and has not persuaded the Court that they should be allowed a third bite at the apple.

**Expenses:** The Court previously indicated that it would approve payment of the requested expenses and liens except for two items as to which it requested additional information. (*See* Doc. 52 at 5.) As to the first, "WC Consulting" fees, the Court finds counsel's explanation sufficient, (*see* Doc. 67 at 3; Doc. 67-3 at ¶ 9; Doc. 69-1 at 3; *see also* Docs. 67-10, 69-10), and concludes that there was a need for these services. As to the second, plaintiffs' counsel now advises that the request to satisfy a lien held by The Rawlings Co. was included by mistake. (*See* Doc. 67 at 3; Doc. 69-1 at 3.)

18

The Court will approve the payment to WC Consulting and will disapprove the satisfaction of the lien held by The Rawlings Co.

The guardian ad litem also proposes that a small amount of the settlement funds be held in trust by plaintiffs' counsel to be available for expenses associated with J.H.'s claims against the remaining defendant. (*See* Doc. 50 at 2-3.) As noted in the Court's February 10 Order, "the Court is comfortable with the requested amount being held in trust by plaintiffs' counsel for the time being, though of course it cannot be disbursed or spent without court approval." (*See* Doc. 52 at 5.)

**Balance of Settlement Proceeds:** At the January 21 hearing, plaintiffs' counsel was unclear about what would happen to the remaining proceeds after payment of attorneys' fees and court-approved expenses and the purchase of a structured settlement. (*See* Minute Entry Jan. 21, 2015.) In a motion to seal related to their second-chance submissions, the guardian ad litem appeared to propose that the money be paid to her. (*See* Doc. 49 at ¶ 6.) In response to the Court's questions raised in the February 10 Order, (*see* Doc. 52 at 6-7), the guardian ad litem now affirms that she would like the remaining proceeds to "be placed in a structured settlement, or if necessary, place the bulk of the funds (70%) in a structured settlement and the remaining 30% in a trust with the Court." (Doc. 67-4 at ¶ 4.)

While the Court is likely to be amenable to an additional structured settlement, plaintiffs' counsel has placed no specifics before the Court for approval. Therefore, the Court will direct that the money be deposited with the Clerk, subject to further orders. When the guardian ad litem has a specific plan in place, she can file a motion in the

19

cause. The Court may be willing to consider a small additional attorneys' fee for such work, payable from the settlement, if counsel properly supports the request with time records and the hourly rate and the amount of time is reasonable. Otherwise, J.H. can apply to the Court for payment of the balance to him when he turns eighteen.

## 2. The Incompetent Adult's Settlement

The parties have asked the Court to approve the settlement as to Mr. Gorham and the payment of an attorneys' fee and certain costs and expenses from the settlement. (*See* Doc. 46; *see also* Doc. 50-1.) As noted in open court at the January 21 hearing and in the Court's February 10 Order, the total settlement amount of Mr. Gorham's claims appears to be fair and reasonable. (*See* Minute Entry Jan. 21, 2015; Doc. 52 at 1.) The specific structured settlement presented, (*see* Doc. 50-1 at 5-7), is also appropriate and in Mr. Gorham's best interests. The question remaining is the disposition of the remainder of the settlement proceeds.

Unlike J.H.'s settlement, the Court held the matter open in all respects as to Mr. Gorham because the Court was unsure how state guardianship law might affect its review. (*See* Doc. 52 at 7-10.) The guardian has submitted a complete copy of Mr. Gorham's guardianship file with the Durham County Clerk of Court. (*See* Docs. 67-8, 69-8.) Plaintiffs' counsel has also submitted affidavits in support of its request for a fee of 33 1/3%.[9] (*See* Docs. 67-1 to 67-7, 69-2 to 69-7; *see also* Doc. 50-1 at 1.)

---

[9] Sealed copies of the evidence plaintiffs' counsel submitted in support of their fee request are filed at Doc. 67-1 to 67-15, and redacted copies are filed on the public docket at Doc. 69-2 to 69-15. To the extent the Court quotes herein from the sealed evidence, those quoted excerpts do

**Attorneys' Fee:** The Court will evaluate the requested fee in light of the *Abrams* factors and the evidence.[10]  *See Abrams*, 605 F.3d at 244.

Over the course of a little over a year, counsel investigated the case, filed the lawsuit, and prepared for and participated in mediation.  (*See generally* Docs. 67-1 to 67-3, 69-2, 69-3.)  Among other things, plaintiffs' counsel communicated with law enforcement, (*see* Doc. 67-2 at ¶¶ 1A-B; *see also* Doc. 67-3 at ¶ 12), travelled to Raleigh to document the scene and meet with clients, (*see* Doc. 67-1 at ¶ 9; Doc. 67-2 at ¶¶ 1A-B), drafted a complaint and some initial discovery, (*see* Doc. 67-2 at ¶ 1F; Doc. 67-3 at ¶ 3; *see also* Doc. 5), gathered and reviewed medical records, (*see* Doc. 67-2 at ¶ 1G; Doc. 67-3 at ¶ 13), conferred with each other, their clients, opposing counsel, and health care providers, (*see* Doc. 67-2 at ¶¶ 1A-B, G; Doc. 67-3 at ¶ 12; *see also* Doc. 67-1 at ¶ 8; Doc. 69-2 at ¶ 8), retained an expert on damages, (*see* Doc. 67-2 at ¶ 2; Doc. 67-3 at ¶ 13), prepared a settlement video, (*see* Doc. 67-2 at ¶ 1H; Doc. 67-3 at ¶ 14), wrote and filed a seven-page brief in opposition to a motion to dismiss, (Doc. 34; *see also* Doc. 67-3 at ¶ 10), and arranged and participated in a mediated settlement conference.  (*See* Doc. 67-1 at ¶ 8; Doc. 67-2 at ¶ 1J; Doc. 67-3 at ¶¶ 10, 14; Doc. 69-2 at ¶ 8; *see also* Docs. 38,

---

not reveal medical or financial information or litigation strategy.  *See infra*; (*see also* Doc. 74 at 8-13, 15-16; Doc. 75 at 8-13, 15-16.)

[10] In their third-chance submissions, the guardian and her attorneys did not speak to the guardian's authority under state law to act on behalf of an incompetent or address the effect of the Clerk of Court's oversight.  (*See* Doc. 52 at 8-9; *see generally* Docs. 67, 67-1 to 67-15; *see also* Docs. 69, 69-2 to 69-15.)

39.)[11] As best the Court can tell, Mr. Watson did most of the work on the case and Mr. Swift and Mr. Gary gave the matter occasional attention in the form of oversight and concentrated attention in preparation for and at the mediation.[12] (*See generally* Docs. 67-1 to 67-3, 69-2, 69-3.) Much of this work was undertaken on behalf of the other plaintiffs, not just on behalf of Mr. Gorham, and some was related to other plaintiffs completely, such as gathering their medical records. (*See, e.g.*, Doc. 67-3 at ¶ 14.)

Beyond drafting written discovery to serve with the complaint, as is allowed by North Carolina state practice, plaintiffs' counsel did not engage in or respond to any discovery or take or defend any depositions.[13] (*See, e.g.*, Doc. 67-2 at ¶ 1F; *see also* Doc.

---

[11] The Court has given little weight to plaintiffs' counsel's repeated use of vague phrases in their affidavits like "extensive investigation," "a lot of time and labor," and "extensive amount of time and labor," (*see* Doc. 67-1 at ¶¶ 8, 10; Doc. 67-2 at ¶¶ 1, 1D, 1F, 1K; Doc. 69-2 at ¶¶ 8-10; Doc. 69-3 at ¶ 1), or "enormous amount of work" and "tremendous amount of work," (*see* Doc. 67-3 at ¶¶ 7, 14), which are not very helpful. While time logs are not required, some sort of estimate of how much of a lawyer's time (one-third? half? all?) was spent on the matter during particular phases of the case might have been more informative. *See Williams*, 2015 WL 127862, at *7 (noting that an incompetent-plaintiff's attorneys submitted "voluminous affidavits" in support of their requested fee, in which they "estimate[d] that they each spent around 1,900 hours on th[e] case," and corroborated this testimony with "copies of time log entries and billing reports").

[12] Beyond saying that he had many conversations with the clients and "direct[ed] the strategy and presentation of the pre-suit investigation and litigation," Mr. Gary's affidavit does not mention any specific tasks. (*See* Doc. 67-1 at ¶¶ 8-9; Doc. 69-2 at ¶¶ 8-9.) Mr. Swift gives an overview of the work done and the problems encountered, but he does not describe work that he personally did beyond testifying that "the entire legal team" approved the presentation narrative script for the mediation video and that "[p]laintiffs' counsel" assembled the plaintiffs' medical records and bills and retained a medical expert. (*See* Doc. 67-3 at ¶¶ 13-14.)

[13] In his affidavit, Mr. Watson testifies that he "put a lot of time and labor into drafting . . . interrogatories and requests for production" and that he "sent that discovery to be served with the complaint in State Court before the case was removed to Federal Court." (Doc. 67-2 at ¶ 1F.) Consistent with federal practice in this district, the defendants did not have to answer that discovery until the Court entered a Scheduling Order. *See* L.R. 26.1(a)(2). The Court entered

22

67-3 at ¶ 3.)  The motions practice was minimal, only one court appearance was needed in connection with the settlement, (*see* Minute Entry Jan. 21, 2015), and the case did not require a trial.

This case required an experienced personal injury lawyer, as it raised or was likely to raise most of the usual issues in a products liability case: a number of plaintiffs with different kinds of injuries, lien issues, a number of defendants with disputes among themselves, insurance coverage issues, expert witnesses, and questions about liability. *See Abrams*, 605 F.3d at 244.  It required some special skills in dealing with media coverage, (*see* Doc. 67-3 at ¶ 3), and the interplay between the criminal charges and insurance coverage, which, while not rare, often are not present in the ordinary negligence case.  (*See, e.g.*, Doc. 67-2 at ¶¶ 1B, 2; Doc. 67-3 at ¶¶ 5, 12.)  Two common disputes are absent here, as contributory negligence was not asserted in the answers, (*see* Docs. 16, 20, 26), and Mr. Gorham's injuries were unquestionably caused by the incident at issue.  Mr. Gorham's case required more time than J.H.'s because his injuries were more serious and there were more medical records involved.  (*See* Doc. 50-1 at 2; *see also* Doc. 50 at 2; Doc. 67-7 at ¶¶ 16-17; Doc. 69-7 at ¶¶ 16-17.)

After an early mediation, the case settled with several defendants on behalf of a number of injured persons for policy limits, despite a coverage dispute.  (*See* Text Order Dec. 4, 2014; Doc. 44; *see also* Minute Entry Jan. 21, 2015; Doc. 52 at 4-5; Doc. 67-2 at ¶ 2; Doc. 67-3 at ¶ 6.)  This was a good result for Mr. Gorham since the recovery was

---

the Scheduling Order well after the case settled with these defendants.  (*See* Minute Entries Feb. 20, 2015; Dec. 4, 2014.)

obtained early without significant trial-related costs or expenses. (*See* Text Order Dec. 4, 2014; Doc. 44; *see also* Minute Entry Jan. 21, 2015; Doc. 52 at 4-5); *Abrams*, 605 F.3d at 244. The amount obtained was ███. The proposed structured settlement is rational and provides substantial benefits for Mr. Gorham by protecting some of his assets. *See Abrams*, 605 F.3d at 244.

Counsel did not produce a copy of a written fee agreement, nor have they testified directly that their initial arrangement with the guardian for legal services included an agreement for a 33 1/3% contingent fee. (*See, e.g.*, Doc. 67-1 at ¶ 12; Doc. 67-2 at ¶ 6; Doc. 69-2 at ¶ 12; Doc. 69-3 at ¶ 6.) Nor does the guardian so testify. (*See* Doc. 67-4 at ¶ 3; Doc. 69-4 at ¶ 3.) However, such an arrangement is implicit in their testimony, (*see* Doc. 67-1 at ¶ 12; Doc. 67-2 at ¶ 6; Doc. 69-2 at ¶ 12; Doc. 69-3 at ¶ 6), and the Court assumes that there was such an agreement because Mr. Pishko and Mr. Mahoney testified that they saw a copy of it. (*See* Doc. 67-6 at ¶ 8m; Doc. 67-7 at ¶ 12a; Doc. 69-6 at ¶ 8m; Doc. 69-7 at ¶ 12a.)

Plaintiffs' counsel has presented evidence that a one-third contingency fee is common in North Carolina personal injury cases and is approved from time to time in cases involving minors. *See supra* note 8; *see also Abrams*, 605 F.3d at 244. None of the testifying lawyers dispute the Court's earlier observation that it would be very unusual for a North Carolina court to approve a one-third fee in a case that settled early for policy limits. *See* discussion *supra*; (*see also* Doc. 52 at 4.)

Mr. Watson testified, and the Court accepts, that the firm withdrew from a case in Chicago that would have required significant court time in order to be available on this

24

case and that the firm turned down "many smaller, marginal cases" for the same reason. (Doc. 67-2 at ¶ 4); *see also Abrams*, 605 F.3d at 244. While the case settled early against some defendants, it remained pending against one defendant and has required continuing time and attention from plaintiffs' counsel. *See Abrams*, 605 F.3d at 244.

It appears that there were significant time pressures early in the firm's representation when there was significant media coverage and a developing criminal case. (*See* Doc. 67-2 at ¶¶ 1A-C, 2; Doc. 67-3 at ¶¶ 5, 9); *see also Abrams*, 605 F.3d at 244. Once that time frame passed, the time pressures were minimal because the statute of limitations was not close to expiring and the case settled before discovery began.[14] (*See* Text Order Dec. 4, 2015; Doc. 44; Scheduling Order Feb. 20, 2015); *see also Abrams*, 605 F.3d at 244.

It appears that several attorneys who worked on the case have significant experience with cases that have the potential to be high-value. (*See* Doc. 67-1 at ¶ 5; Doc. 67-2 at ¶ 9; Doc. 69-2 at ¶ 5; Doc. 69-3 at ¶ 9); *see also Abrams*, 605 F.3d at 244. As to reputation, the Court has given little weight to counsel's self-serving statements, (*see* Doc. 67-1 at ¶¶ 3-7; Doc. 67-2 at ¶ 9; Doc. 67-3 at ¶ 15; Doc. 69-2 at ¶¶ 3-7; Doc. 69-3 at ¶ 9), but accepts Mr. Pishko's testimony that counsel have a "well known ability to obtain outstanding results for their clients." (Doc. 67-6 at ¶ 11; Doc. 69-6 at ¶ 11); *see*

---

[14] In his affidavit, Mr. Watson testifies that the "time pressures" to mediate the case were "enormous." (Doc. 67-2 at ¶ 7.) The mediation was not court-ordered, (*see* Docs. 38, 39), and little was likely to happen in the case while the motions to dismiss were pending. (*See* Docs. 22, 24, 29.) While this "deadline" and these "time pressures" were self-imposed, they nonetheless existed, and the Court has taken them into account. *See Abrams*, 605 F.3d at 244.

*also Abrams*, 605 F.3d at 244. Counsel competently represented Mr. Gorham in obtaining the settlement, but counsel has not exhibited a similar degree of competence in submitting the settlement for court approval. *See* discussion *supra*. Counsel's work in connection with obtaining court approval has delayed the availability of resources to Mr. Gorham. *See* discussion *supra*.

Nothing indicates that the case was undesirable. (*See* Doc. 67-2 at ¶ 10); *see also Abrams*, 605 F.3d at 244. The attorney-client relationship began after the accident and appears limited to this case. (*See* Doc. 67-2 at ¶ 11); *see also Abrams*, 605 F.3d at 244. The guardian consents to the 33 1/3% fee. (*See* Doc. 67-4 at ¶ 3; Doc. 69-4 at ¶ 3.)

Taking all of these factors into account, the Court finds that an attorneys' fee of 25% is appropriate. *See Abrams*, 605 F.3d at 244. Given ████████████████████, this is a ████████ fee that compensates counsel for the time and energy spent on the case and for the risk they undertook when they accepted the case and that they continued to bear until recently as to the ongoing case against the remaining defendant. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ The 25% fee takes into account the circumstances specific to this case discussed *supra* and the quality of plaintiffs' counsel's work. *See Abrams*, 605 F.3d at 244.

The Court has considered testimony from Mr. Comerford, Mr. Mahoney, and Mr. Pishko about the reasonableness of a one-third fee in this case. (*See generally* Docs. 67-5 to 67-7, 69-5 to 69-7.) The Court is familiar with these lawyers, who are respected

26

members of the North Carolina Bar with the experience to offer an opinion in this area, and the Court has found significant parts of these affidavits, particularly the specifics in the affidavits provided by Mr. Mahoney and Mr. Pishko, to be helpful. (*See, e.g.,* Doc. 67-6 at ¶¶ 8-11; Doc. 67-7 at ¶¶ 12, 22, 30, 34; Doc. 69-6 at ¶¶ 8-11; Doc. 69-7 at ¶¶ 12, 22, 34.)

While the Court respects and has considered these opinions, the Court evaluates the matter differently. None of these lawyers specifically address the reasonableness of the ██ attorneys' fee in light of the fact that the case settled early for policy limits, that counsel has also been compensated by other injured persons as part of the same settlement, or the problems caused by the quality of counsel's work in obtaining court approval of Mr. Gorham's settlement. It further appears that the opinions of Mr. Pishko and Mr. Maroney are based at least in part on materials not provided to the Court.

The Court has no doubt that there are some cases where a one-third fee – or even more - in an incompetent's personal injury case would be appropriate. For the reasons stated and in its discretion, the Court does not find this case to be one of them. The Court finds a 25% fee to be reasonable.

**Expenses and Liens:** The expenses claimed for reimbursement are for typical costs associated with litigation and medical care and are appropriate to be paid out of the settlement. (*See* Doc. 50-1 at 1-3.) While the expense from W.C. Consulting is not typical, it is appropriate in this case. *See* discussion *supra.*

27

The lien identified in Mr. Gorham's Closing Statement appears to arise out of his medical care expenses. (*See* Doc. 50-1 at 3.) It is appropriate to satisfy this lien out of the settlement funds.

The guardian also proposes that plaintiffs' counsel hold some of the settlement funds in trust to be available for expenses associated with Mr. Gorham's claims against the remaining defendant. (*See* Doc. 50-1 at 3-4.) At the time this request was made, it was a reasonable sum to withhold to have available to pay towards Mr. Gorham's share of necessary litigation expenses, such as expert-witness costs and court-reporter fees. Pending settlement of those claims and further order of the Court, plaintiffs' counsel may hold the requested amount in trust.

**Settlement Proceeds:** The guardian appears to propose that the remaining proceeds be released to her for use in paying Mr. Gorham's bills and expenses. (*See* Doc. 49 at ¶ 6; *see also* Doc. 67-4 at ¶ 3; Doc. 69-4 at ¶ 3.) Given the statutory protections in place under North Carolina law for oversight of guardianships, (*see* Doc. 52 at 8), and Ms. Gorham's sworn statement indicating awareness of her obligations and responsibilities as guardian, (*see* Doc. 67-8 at 3), this is appropriate. As soon as the guardian provides proof to the Court that she has a bond in place and on file with the Durham County Clerk of Court that is sufficient to cover her personal liability for Mr. Gorham's increased assets, the Court will direct the release of those funds to her. She may file this bond under seal, as it will disclose details about the settlement amount.

It is **ORDERED** that the pending motions to dismiss, (Docs. 22, 24, 29), are **DENIED** as moot, the joint motions to approve the settlements, (Docs. 46, 47), are

**GRANTED**, and the settlements of J.H.'s and Mr. Gorham's claims are approved pursuant to the following terms:

1. The total amount of each plaintiff's settlement is approved as fair and reasonable.

2. The proposed structured settlements are approved.

3. Plaintiffs' counsel shall pay the expenses set forth in the Closing Statements at Doc. 50 and Doc. 50-1, with the exception of the lien in Doc. 50 listed as being held by The Rawlings Co, from settlement proceeds in the amounts requested.

4. Plaintiffs' counsel may continue to hold in trust the amounts requested in the Closing Statements to be used for litigation expenses in connection with J.H.'s and Mr. Gorham's claims against the remaining defendant, subject to court order and oversight.

5. Plaintiffs' counsel may pay to themselves 10% of the total settlement amount obtained for J.H. as an appropriate attorneys' fee.

6. After payment of the approved expenses and the approved attorneys' fee, and after withholding the approved amount for payment of future litigation expenses, the remaining amount of J.H.'s settlement shall be paid into the Clerk of Court to be held for J.H. pending his eighteenth birthday, subject to further court orders should the guardian ad litem present an appropriate additional structured settlement.

7. Plaintiffs' counsel may pay to themselves 25% of the total settlement amount obtained for Mr. Gorham as an appropriate attorneys' fee.

8.  After payment of the expenses, satisfaction of the lien as stated herein, and payment of the approved attorneys' fee, and after withholding the approved amount for payment of future litigation expenses, the remaining amount of Mr. Gorham's settlement shall be paid into the Clerk of Court to be held pending submission of a copy of an appropriate bond on file with the Durham County Clerk of Court and further order of the Court.

9.  Plaintiffs' counsel shall prepare revised Closing Statements reflecting these rulings and shall submit them under seal at the time the settlement proceeds are paid into the Clerk's office.

10.  These revised Closing Statements will be sealed for the same reasons set forth in the Court's Order sealing the initial Closing Statements. (*See* Docs. 74, 75.)

This the 22nd day of May, 2015.


_____
UNITED STATES DISTRICT JUDGE